

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-24-00078-CR

BRANDON PEREZ, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 16th District Court
Denton County, Texas
Trial Court No. F22-3244-16

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

## MEMORANDUM OPINION

A Denton County jury convicted Brandon Perez of aggravated assault and assessed a sentence of two years' imprisonment. *See* TEX. PENAL CODE ANN. § 22.02 (Supp.). On appeal, Perez argues that the evidence is legally insufficient to support the jury's finding of guilt.[1] He also argues that the bill of costs contains a premature time payment fee and requires courts costs to be paid immediately instead of on release from confinement.

We find that sufficient evidence supported the jury's finding of Perez's guilt. We also agree with Perez, as does the State, that the time payment fee is premature and that court costs are not currently due. As a result, we modify the bill of costs and affirm the trial court's judgment.

## I.      Legally Sufficient Evidence Supports the Jury's Finding of Guilt

### A.      Standard of Review

"In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt." *Mayfield v. State*, 676 S.W.3d 244, 249 (Tex. App.—Fort Worth 2023, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017)). "This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* (citing *Jackson*, 443 U.S. at

---

[1]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). We follow the precedent of the Second Court of Appeals in deciding the issues presented. *See* TEX. R. APP. P. 41.3.

319; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021)).[2] "We determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict." *Id.* (citing *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018)). "We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution." *Id.* (citing *Braughton*, 569 S.W.3d at 608).

"To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by a hypothetically correct jury charge to the evidence adduced at trial." *Id.* (citing *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021)). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* at 249–50 (citing *Hammack*, 622 S.W.3d at 914). "The law as authorized by the indictment means the statutory elements of the offense as modified by the charging instrument's allegations." *Id.* at 250 (citing *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021)).

A person commits assault if he "intentionally or knowingly threatens another with imminent bodily injury." Tex. Penal Code Ann. § 22.01(a)(2) (Supp.). The offense becomes an aggravated assault if a "deadly weapon [is used] during the commission of the assault." Tex. Penal Code Ann. § 22.02(a)(2). Here, the State's indictment alleged that Perez "intentionally

---

[2]Perez also argues that the evidence is factually insufficient to support his conviction. However, "[t]he court of criminal appeals has held that there is no meaningful distinction between the legal sufficiency standard and the factual sufficiency standard." *Johnson v. State*, 370 S.W.3d 100, 103 (Tex. App.—Fort Worth 2012, no pet.) (citing *Brooks v. State*, 323 S.W.3d 893, 895, 912 (Tex. Crim. App. 2010) (plurality op.)).

or knowingly threaten[ed] Neil Osowsky with imminent bodily injury by pointing a firearm [in his] direction."

**B.    The Evidence at Trial**

The evidence at trial established that this dispute was between neighbors living in the Trophy Club subdivision.  Neil and his wife, Kimberly Osowsky, lived next door to Sandra Peterson, who had rented a portion of her home to Perez and his soon-to-be wife, Kaytlin Robinson.  By all accounts, the Trophy Club residents had positive neighborly interactions before the March 2022 incident, and the evidence shows that Neil had hired Perez, who owned a landscaping business, to complete yard work at his home.  Even so, Kimberly testified that she had a strange encounter with Perez when she began looking for contractors to repair a damaged fence line on the boundary between her home and Peterson's home.

According to Kimberly, Perez interrupted her consultation with a contractor by saying that the Osowskys treated their contractors poorly and did not pay them.  Kimberly was embarrassed by the encounter and decided to confront Perez about why he had spoken to her and the contractor in such a manner.  Kimberly said Perez started to "bad mouth[]" Neil and told Kimberly that she and her daughter should not be associated with him.  Upset by that encounter, Kimberly returned home alone and sent a text to Neil stating that Perez should not be allowed to do their yard work anymore.  After Neil returned home with his daughter, two different stories emerged.

In the Osowskys' version of events, Neil and his daughter went to Peterson's home to discuss the issue.  Neil testified that he was carrying a concealed weapon when Robinson

4

answered the door, but never brandished the weapon. According to Neil and his daughter, Robinson claimed that Peterson was not available to speak with them, and they returned home.

In Robinson's account, Robinson said that she was cooking dinner when she heard Neil aggressively pounding on the glass door. Robinson said Neil, while accompanied by his daughter, was yelling, angry, and demanded to see Peterson, who had informed Robinson that she wanted no part of the drama. According to Robinson, Neil had his nose pressed up to the glass door and was holding a dark colored firearm with red lettering in his hand, which was pointed at her abdomen. After saying that he would be back, Neil and his daughter left.

Robinson testified that she feared for her life and called Perez's father, Antonio Perez, who also lived in the Trophy Club subdivision, because Perez was driving to a jobsite. Antonio testified that Robinson called him while in a "[v]ery frantic, terrified" state to report that Neil had threatened her with a firearm and said that "he was going to kill" her and Perez. According to Antonio, Robinson asked him to come over, which he did immediately. After Antonio said he was on the way, Robinson called Perez to tell him what had happened.

Kimberly testified that Perez called Neil and told him to "get his fat butt outside." Robinson testified that Kimberly and Neil came back over to Peterson's house after Perez's call and told Robinson that they were "going to make [her] pay" for calling Perez on them. Antonio testified that, as he pulled up to Peterson's residence, he saw Kimberly and Neil yelling at Robinson outside of Peterson's home.

Rosanne Lynn Sears, an officer with the Trophy Club Police Department (TCPD), testified that Perez flagged her down while they were both driving, would not stop but continued

5

at a slow pace, and "mentioned something about the Osowskys, a gun, and his wife." Sears learned from the administrative assistant at the TCPD that Perez had called her, rather than dispatch, but that Officer Cody Northcutt was en route to the scene per Sears's request.

Julie Dorn, who had lived in the Trophy Club subdivision for a long time, testified that she was walking her dog when she stopped to say hello to Neil and his daughter. Dorn noticed that they were distracted and were looking down the street as if they were waiting for something. According to Dorn, Perez's truck pulled up, and the daughter asked her to stay because she believed there was "going to be a fight."

Antonio watched as Perez pulled up, got out of the truck, and started exchanging words with Neil, whom he described as "very aggressive." A short recording from Kimberly's phone, which was introduced to the jury, showed that Perez accused Neil of threatening to shoot him in front of a contractor. Neil testified that he had no idea why Perez made that statement. The short clip of the recording did not show that Perez had a weapon. It also showed that Neil was coaxing Perez to fight.

Dorn testified that Perez and Neil started yelling at each other and that she saw Perez point a gun towards Neil while saying, "I'm going to shoot you." Neil testified that Perez aggressively got out of his car, walked up to Robinson, pulled a small gun out of her purse, and pointed it at him while cursing. Neil testified that he was in fear of imminent bodily injury. Kimberly testified that Perez pointed a "little shiny silver gun" at Neil while walking across their yard and yelling obscenities. According to Kimberly, their daughter witnessed the incident and was hysterical and upset. The daughter confirmed Neil's and Kimberly's accounts and said

6

Perez aimed the gun at her father while walking towards him and cussing. According to Neil, Perez knew Neil carried a weapon, but Neil, Kimberly, and Dorn testified that Neil did not take his weapon out during the altercation.

While Antonio testified that he did not see a gun because he was focused on Neil's behavior, Robinson admitted that Perez had retrieved a gun from her purse. Even so, she said that Perez held the gun in his left hand while making gestures with his right hand and never pointed the gun in Neil's direction. According to Robinson, Perez only had the gun out and visible for five or ten seconds before putting it away in his waistband.

By the time officers appeared at the scene, Kimberly and Robinson had gotten in between the men and had broken up the fight. Perez had retreated into Peterson's home and according to Sears, Kimberly and Neil told her Perez had drawn a weapon.

Joshua Hernandez, another officer with the TCPD, testified that Perez willingly came outside when he knocked on the door. According to Hernandez, Perez and Robinson both denied that Perez had a weapon. Hernandez said that Robinson appeared upset, and he learned that firearms were used at both the Peterson residence and the Osowsky residence. After TCPD spoke to all of the witnesses, Perez was arrested.

Jon Ciarletta, an officer with the TCPD, helped execute a search warrant for Peterson's home and removed a dark-colored purse with a gold chain from Robinson's room. Ciarletta testified that the purse had a magazine from a Ruger "small pocket pistol" with five rounds of ammunition in it. Ciarletta said that the firearm was not found inside the home.

7

**C.      Analysis**

Perez argues that the evidence is legally insufficient to support his conviction because the recording from Kimberly's phone did not show any weapon, and Robinson testified that she had recorded the incident on her phone but that the TCPD never recovered it.  The lack of Robinson's recording has no bearing on our analysis because "in a legal-sufficiency review, 'the question is not what evidence there isn't[;] it's what evidence there is.'"  *Mayfield*, 676 S.W.3d at 251 (alteration in original) (quoting *Acosta v. State*, 429 S.W.3d 621, 630 (Tex. Crim. App. 2014)).

In this case, evidence from Neil, Kimberly, their daughter, Dorn, and even Robinson established that Perez held a firearm during his altercation with Neil.  Although Robinson denied that Perez had pointed the firearm in Neil's direction, the jury was free to disbelieve her account.  Instead, the jury could have rationally relied on the testimony showing that Perez pointed the firearm towards Neil.  The jury could have rationally given the greatest weight to Dorn's testimony because she was a disinterested witness who testified that Perez said he was going to shoot Neil while holding the weapon in Neil's direction.  *See Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.) (stating that "the jury is the **sole** judge of the witnesses' credibility and the weight to be given their testimony").  Neil testified that he was in fear of imminent bodily injury.  Viewing this evidence in the light most favorable to the verdict, we find that a rational jury could conclude that Perez intentionally threatened Neil with imminent bodily injury by pointing a firearm, which is a deadly weapon per se, in his direction.  *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(A) (Supp.).

8

Because legally sufficient evidence supports Perez's conviction for aggravated assault, we overrule Perez's first point of error.

## II.      We Modify the Bill of Costs

The trial court's judgment contains an order to pay court costs but does not specify the amount. Instead, the judgment refers to the court's bill of costs, which contains a $15.00 time payment fee due if court costs are not paid within thirty days of the trial court's signed judgment. In his second point of error, Perez argues that the time payment fee is premature, and the State concedes the issue. Accordingly, we sustain Perez's second point of error and strike the time payment fee "without prejudice to [it] being assessed later if[] more than 30 days" elapses without payment of court costs after they become due. *Dulin v. State*, 620 S.W.3d 129, 133 (Tex. Crim. App. 2021).

In his last point of error, Perez notes that the judgment orders payment of court costs on release of confinement but that the bill of costs orders immediate payment of court costs. The State concedes that Perez's court costs are not due until he is released from confinement and requests that we modify the bill of costs to reflect that fact. *See* TEX. CODE CRIM. PROC. ANN. art. 42.15(b)(2) (Supp.) (allowing the trial court to order payments of costs at a later date). As a result, we sustain Perez's last point and modify the bill of costs by including a statement showing that court costs are not due until Perez is released from confinement.

9

## III.     Conclusion

After having modified the trial court's bill of costs, we affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:     March 5, 2025
Date Decided:       March 7, 2025

Do Not Publish